WILLIAM HAMILTON LAWRENCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100364. Promulgated April 9, 1941.

*Clark J. Milliron, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, and *Lon H. Moss, Esq.*, for the respondent.

### OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $1,609.83 in war excess profits tax for 1917. Petitioner contends (1) that he is not taxable on his distributive share of income of Philippine partnerships derived from practicing law in the Philippine Islands; and (2) that, if he is taxable, the deficiency is barred by the statute of limitations. The facts are stipulated.

Petitioner, a citizen of the United States, now residing in San Francisco, California, was, during the years 1902 to 1918, engaged in the practice of law in Manila, Philippine Islands, as a member of successive partnerships. The income of the partnerships was derived exclusively from professional services performed in the Islands. Petitioner and the partnerships kept their accounts on the cash basis.

Petitioner's net income in 1917 was:

| | |
|---|---|
| Salaries, wages and commissions | ₱1,220.00 |
| Share of profits of law partnership of 1917 | 44,888.56 |
| Share of profits of law partnerships prior to 1917 | 6,137.11 |
| | ₱52,245.67 |

This was equivalent to $26,122.84. He duly filed an income tax return for 1917 with the collector of internal revenue of the Philippine Islands. Data necessary and sufficient for the preparation of a war excess profits tax return appeared on the income tax return. Petitioner filed no war excess profits tax return. The Commissioner pre-

pared such a return and so advised the taxpayer in the deficiency notice of July 21, 1939. This return showed net income of $26,122.67, and a deficiency was determined of $1,609.83.

The determination rests upon the statement in the deficiency notice:

During the taxable year 1917 you were a citizen of the United States residing in the Philippine Islands engaged in the practice of law. Your net income from that source is held to be subject to the war excess-profits tax imposed by Title II of the Revenue Act of 1917.

There is no determination or suggestion of fraud.

Partnerships were subject to excess profits tax upon their net income, Revenue Act of 1917, sec. 201. By the same section, individuals were also subject to such tax, but members of partnerships, although subject generally to the excess profits tax, were not individually subject to such tax upon their distributive shares of the partnership income, Regulations 41, art. 41.[1] So far as they were applicable, the regulations touched lawyers in the Philippine Islands no less than those practicing within continental United States. The Revenue Act of 1917, section 200, treated Philippine partnerships as foreign partnerships, and imposed the excess profits tax upon only the partnership net income derived from sources within the United States. The petitioner's partnerships had no net income from sources within the United States and therefore there was no basis for an excess profits tax. The respondent is not claiming a tax upon the partnership.

The respondent claims the right to subject the individual partner to a 1917 war excess profits tax upon his share of partnership income from sources in the Philippine Islands. This would be contrary to the regulations in force at the time and consistently recognized ever since. If the regulations are to be ignored and the statute strictly applied under a revised interpretation to members of foreign partnerships, this must also be done as to members of domestic partnerships. Article 41 is equally applicable to both. Thus the tax would now be retrospectively said to apply to the distributive shares of all members of partnerships, such individual income being held now to be from trade or business, whether derived from sources in the Philippines, Porto Rico, foreign countries, or from the main part of the United States. Nothing indicates that article 41 was intended to cover only members of partnerships which had actually paid excess profits taxes, and then only to the extent of such payment. There is no foundation either

---

[1] ART. 41. *Individual member of partnership.*—Inasmuch as a partner in his individual capacity is not considered to be engaged in trade or business with respect to his share in the profits of the partnership, he is not subject to excess profits tax thereon. Consequently, in computing his net income for purposes of the excess profits tax he need not include his share of the partnership profits.

He shall, however, in computing his net income of class A under article 35, include any salary or compensation from the partnership for personal services (including any amount allowed to the partnership as a deduction on his account for the period prior to March 1, 1918, in accordance with article 32).

in the statute or the regulations for such a limitation of the article. This new interpretation more than twenty years after the statute has been superseded would be unconscionable. The 1917 excess profits tax was the first of its kind in this country and was difficult of interpretation and application in many respects.[2] The regulations were drawn to facilitate administration of a novel statute. Many of the administrative rulings were expressly made to adjust the statute to practical conceptions.[3] Regulations 41 was the *vade mecum* of both the taxpayers and the Government. It is now too late to say that it goes beyond the administrative power. Preeminently it should be recognized as having the force of law. The Commissioner's determination is reversed.

---

[2] In his appearance before the House Ways and Means Committee, December 14, 1920, considering revenue revision, Thomas S. Adams, who was a member of the first Advisory Tax Board appointed under the Revenue Act of 1918, section 1301, said (p. 39) : "* * * I would recommend that you take the regulations, particularly for the revenue act of 1917, made carefully, conscientiously, sympathetically, and make those regulations law so that they cannot be challenged. For instance, in obedience to the universal demands, but with a rather slender foundation in the law itself, the Treasury Department under the 1917 revenue act decided to accept consolidated returns of corporations. That was on the whole a regulation of mercy, as also of equity and business logic. It will result in a few taxpayers being called upon to pay greater taxes, and a considerable number of them paying less. If it goes to the courts, there is a strong possibility that they may say what I have said, that it was equitable and merciful and in accordance with present business keeping, but that there was not sufficient statutory foundation for it, and the courts may wipe it out.

"I wish you gentlemen would have other experts than Treasury experts examine regulation 41, dealing with and applying to the revenue act of 1917, and ask them if it has been done both carefully and equitably and in the proper spirit, and if it is then I wish the Congress would stop further disputes, stop this continual overturning of things by new regulations and court decisions and say that that is the law for 1917, that discussion about it shall hereafter cease, and let us go on. I can conceive of no more statesmanlike action in the field of taxation than something of that kind.

"Mr. Longworth. Is there any question that the courts might upset the various rulings as to similar corporations that were made?

"Dr. Adams. I think a number of those rulings, Mr. Longworth, are in grave doubt.

"Mr. Longworth. Isn't that a highly important question?

"Dr. Adams. I think the whole statute is filled with difficult, ambiguous points, and all the regulations are filled with doubtful rulings.

"Mr. Hull. In the interest of equity to the taxpayers?

"Dr. Adams. Judge Hull can be a major witness in this, because he presided over the body that made the regulation."

Joseph E. Sterrett, another member of the original Advisory Tax Board, said, in a memorial pamphlet, "In Appreciation of Thomas Sewall Adams" :

"The Treasury, in a determination to make the law work, asked a group, of which Dr. Adams became a leader, to prepare regulations for adoption by the Treasury for the administration of the new and untried Excess Profits Tax Law. This task was more than an ordinary effort at drafting of regulations; it was essentially legislation. Every step taken was submitted to and discussed with the Chairman of the Finance Committee of the Senate and with the Chairman of the Ways and Means Committee of the House. These men gave their whole-hearted approval to every decision reached by this group of which Dr. Adams was a member. So much so, indeed, that in the 1918 Revenue Act Congress inserted, with retroactive effect, several of these regulations that were most open to attack if litigated under the 1917 Act."

[3] See Secretary McAdoo's statement, June 17, 1918, before the House Ways and Means Committee at the beginning of the hearings on the proposed Revenue Act of 1918 ; Report of the Senate Committee on Finance on the Revenue Bill of 1918, 65th Cong., 3d sess., Rept. No. 617, p. 36 ; T. B. R. 38, C. B. 1, p. 280 ; T. B. R. 49, C. B. 1, p. 284.

Since the Commissioner's determination is reversed on the substantive ground, it is unnecessary to consider the petitioner's contention that the statute of limitations precludes the deficiency.

*Decision will be entered for the petitioner.*